IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| APRIL FLOOD, | :: | MOTION TO VACATE |
| Movant pro se, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 4:13-CR-38-HLM-WEJ-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 4:14-CV-219-HLM-WEJ |

## FINAL  REPORT  AND  RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant April Flood's pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [48] ("Motion to Vacate"), as amended [52] ("Amended Motion")[1], and the government's Response [59].  Following a December 12, 2014 evidentiary hearing [69 and 70], and having considered the evidence presented and the parties' post-hearing briefs [71 and 76], the undersigned **RECOMMENDS** that the Motion to Vacate, as amended, be **DENIED**, and that the Court **DECLINE** to issue a certificate of appealability.

---

[1] Ms. Flood also raised additional claims in a letter to the Court [60-1].

## I.  **PROCEDURAL HISTORY**

A federal grand jury returned an eight-count indictment against Ms. Flood charging her in Counts One through Four and Count Six with distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and (b)(1)(C); in Count Five with possession with intent to distribute methamphetamine, in violation of §§ 841(a)(1) and (b)(1)(B)(viii); in Count Seven with using and maintaining places for the purpose of distributing methamphetamine, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and in Count Eight with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Indict. [1].)  Ms. Flood entered a binding guilty plea to Count Five, pursuant to a negotiated plea agreement in which the government agreed to dismiss any and all remaining counts.  (Guilty Plea & Plea Agreement [26]; Plea Tr. [55].)  The plea agreement set forth the parties' agreement regarding forfeiture of assets and property, which included the forfeiture of Ms. Flood's real property located at 826 Old Highway 411, Chatsworth, Georgia.  (Guilty Plea & Plea Agreement 9-13.)  The plea agreement further set forth the parties' agreement to recommend jointly, among other things, that the applicable base offense level was 32 and that the appropriate disposition of the case was a sentence of 120 months of imprisonment.  (Id. at 6-7.)

2

The plea agreement also included an appeal waiver provision, which provided that Ms. Flood

> voluntarily and expressly waives the right to appeal her conviction and sentence and the right to collaterally attack her conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that [Ms. Flood] may file a direct appeal of an upward departure or upward variance from the Sentencing Guideline range as calculated by the district court.

(Guilty Plea & Plea Agreement 16-17.)  This provision of the plea agreement further provided that Ms. Flood could file a cross appeal if the government appealed the sentence.  (Id. at 17.)  Ms. Flood signed the plea agreement and a separate certification section, which states in relevant part:

> I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding.  No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.

(Id. at 18-20.)

At the plea hearing, Ms. Flood was sworn in and confirmed that she understood the nature of the charge against her and that she had talked it over with her attorney. (Plea Tr. 3-4.)  Ms. Flood also acknowledged that she had read and discussed the plea

3

agreement with her attorney.  (Id. at 4.)  The Court then explained to Ms. Flood the rights she was giving up in pleading guilty, and Ms. Flood stated that she understood. (Id. at 5-8.)  Ms. Flood also understood that she faced a possible maximum sentence of life imprisonment and a mandatory minimum sentence of ten years of imprisonment. (Id. at 8-9.)  Ms. Flood confirmed her agreement that 120 months of imprisonment was a reasonable sentence in this case.  (Id. at 12.)  Ms. Flood further understood that her real property would be forfeited.  (Id. at 9, 12.)  The Court explained that it would take into account the sentencing guidelines and other factors to determine whether the sentence the parties had agreed to was reasonable and that Ms. Flood would have an opportunity to withdraw her plea if the Court elected not to accept the agreed upon sentence.  (Id. at 9-12, 14.)  The Court then reviewed the terms of the appeal waiver provision of the plea agreement and its consequences, and Ms. Flood affirmed that she understood the effect of the waiver.  (Id. at 14.)  Ms. Flood then confirmed that no one had promised her anything not included in the plea agreement or threatened her to plead guilty.  (Id. at 15.)  Ms. Flood stated that she had discussed the matter fully with her attorney.  (Id.)  The prosecutor then summarized what the evidence would show if the case went to trial, and Ms. Flood agreed with those facts.  (Id. at 16-17.)

At the sentencing hearing, the Court approved the plea agreement, determined that Ms. Flood's guideline range was 135 to 168 months of imprisonment, and sentenced Ms. Flood to the agreed upon sentence of 120 months of imprisonment. (Sentencing Hr'g Tr. [47] 5-7; J. [37].)  Ms. Flood did not file a direct appeal.

Ms. Flood timely filed the instant Motion to Vacate.  As grounds for relief, Ms. Flood alleges that:  (1) her guilty plea was involuntary based on ineffective assistance of counsel because her attorney misinformed her regarding the criminal forfeiture of her real property, thus, coercing her to plead guilty, and then refused to move to withdraw the plea; (2) her attorney refused to seek the recusal of Senior United States District Judge Robert L. Vining, Jr.; (3) counsel further provided her ineffective assistance at sentencing by failing to (a) object to the base offense level of 32 based on the "actual" weight of the drugs, (b) object to the criminal history category, (c) object to the 21 U.S.C. § 851 enhancement, and (d) seek a downward departure based on Ms. Flood's history of physical abuse; (4) her attorney "refused to . . . represent Flood in her appeals as [counsel] implied she would do during sentencing"; and (5) counsel was ineffective for failing to (a) present evidence regarding the government informant's lack of credibility, (b) challenge the warrantless search, and (c) explain the plea, sentencing guidelines, and mandatory minimum sentence to Ms.

5

Flood.  (Mot. Vacate 4-5, 7-8, 11; Mem. [48-1] at 2-5; Am. Mot.; Letter 1-2.)  The government responds that Ms. Flood's claim that counsel failed to file a notice of appeal requires an evidentiary hearing, that her claims challenging the validity of her guilty plea lack merit, and that her remaining claims are barred by her valid appeal waiver and further lack merit.  (Resp. 8-25.)

The undersigned appointed counsel to represent Ms. Flood and conducted an evidentiary hearing on December 12, 2014.  (Evidentiary Hr'g Tr. [70].)  In her counseled post-hearing brief, Ms. Flood argues that her attorney was ineffective for failing properly to advise her of her right to appeal because the attorney stated only that Ms. Flood had waived her right to appeal.  (Movant's Br. [71] 11-13.)  The government responds that counsel adequately consulted with Ms. Flood regarding her appellate rights and that, in any event, counsel had no duty to consult with Ms. Flood about an appeal because Ms. Flood had no non-frivolous grounds for an appeal and had not reasonably demonstrated that she was interested in appealing.  (Gov't Br. [76] 2, 8-12.)  Lastly, the government asserts that Ms. Flood has not shown prejudice because she cannot demonstrate that she would have appealed absent counsel's alleged ineffectiveness.  (Id. at 2, 12-13.)

II.   **DISCUSSION**

A.    **Grounds (1) and (5)(c):  Validity of Plea**

Ms. Flood claims that her guilty plea was involuntary because counsel misinformed her regarding the criminal forfeiture of her real property and failed to explain the plea, sentencing guidelines, and mandatory minimum sentence. (Mot. Vacate 4, 8; Mem. 3-4; Letter 2.) Ms. Flood's challenges to the validity of her guilty plea based on ineffective assistance are not barred by her appeal waiver. Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam). To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). Ms. Flood has the burden of affirmatively proving prejudice. Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory

> allegations unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Ms. Flood's assertions are belied by the record.  During the plea hearing, Ms. Flood confirmed her understanding that her real property would be forfeited and affirmed that no one had promised her anything not included in the plea agreement or threatened her to plead guilty.  (Plea Tr. 9, 12, 15.)  Ms. Flood further asserted that she had read and discussed the plea agreement fully with her attorney.  (Id. at 4, 15.)  Ms. Flood acknowledged that she faced a ten-year mandatory minimum sentence, that she had agreed that 120 months of imprisonment was a reasonable sentence in this case, and that her sentence would include a term of supervised release of eight years to life.  (Id. at 8-9, 12.)  Furthermore, the Court explained that it would take into account the sentencing guidelines to determine whether the sentence the parties had agreed to was reasonable and then reviewed the sentencing recommendations that the government had agreed to in the plea agreement, which Ms. Flood maintained she had read and discussed with counsel.  (Id. at 9-12.)  Ms. Flood then confirmed her understanding of the Court's explanation.  (Id. at 10-12.)  Ms. Flood has not met her "heavy burden to

8

show that [her] statements under oath were false," <u>Patel</u>, 252 F. App'x at 975 (citation omitted), and thus fails to show that counsel gave her incompetent advice.

Additionally, Ms. Flood has not met her burden to show prejudice.  Ms. Flood has not alleged that she would have considered going to trial rather than pleading guilty had counsel's advice been different.  Accordingly, Ms. Flood is not entitled to relief on grounds (1) and (5)(c).

**B.**   <u>**Grounds (2), (3), (5)(a) and 5(b):  Waiver**</u>

Ms. Flood further claims that counsel was ineffective for failing to:  (1) seek the recusal of Judge Vining; (2) object to the base offense level of 32; (3) object to the criminal history category; (4) object to the § 851 enhancement; (5) seek a downward departure based on Ms. Flood's history of physical abuse; (6) present evidence regarding the government informant's lack of credibility; and (7) challenge the warrantless search.  (Mot. Vacate 5, 7, 10; Mem. 2-3; Am. Mot.; Letter 1.)  These claims are barred by Ms. Flood's valid appeal waiver.

"It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." <u>Williams v. United States</u>, 396 F.3d 1340, 1341 (11th Cir. 2005) (citation omitted).

AO 72A
(Rev.8/82)

> [F]or a sentence-appeal waiver to be enforceable, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."

Id. (citation omitted). "[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes [a collateral attack upon] the sentence through a claim of ineffective assistance of counsel during sentencing." Id. at 1342.

At the plea hearing, the Court specifically questioned Ms. Flood about the appeal waiver, and it is clear that Ms. Flood understood the full significance of the waiver. (Plea Tr. 14.) Accordingly, the undersigned finds that Ms. Flood voluntarily and intelligently waived her right to appeal her convictions and sentences and to pursue any other collateral post-conviction relief. The only exceptions to this waiver, i.e., a government appeal or a sentence that exceeds the guideline range as calculated by the Court, do not apply here. Thus, Ms. Flood's valid appeal waiver precludes her claims that counsel provided her ineffective assistance during sentencing. Williams, 396 F.3d at 1342.

Additionally, as to Ms. Flood's claims that counsel was ineffective for failing to seek the recusal of Judge Vining, present evidence regarding the government

10

informant's lack of credibility, and challenge the warrantless search, such claims are waived by her valid guilty plea.  See United States v. Tome, 611 F.3d 1371, 1379 (11th Cir. 2010) (holding that a defendant's guilty plea waives "all challenges to the factual basis underlying that violation and all other non-jurisdictional challenges to it") (citations omitted).

Furthermore, Ms. Flood's claims lack merit.  Ms. Flood maintained that Judge Vining should have been recused because he knew where her property was located and knew the Flood family name because he was from Murray County.  (Am. Mot. 1-2.) This is not a sufficient ground for recusal.  See United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (holding that recusal is appropriate only where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality") (citation omitted); United States v. Cerceda, 188 F.3d 1291, 1293 (11th Cir. 1999) (per curiam) ("Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.'") (citation omitted).  Regarding counsel's assistance at sentencing, Ms. Flood cannot show prejudice because she received the lowest possible sentence in accordance with her binding plea agreement.  See Strickland v. Washington, 466 U.S. 668, 691 (1984) ("An error by counsel, even if professionally unreasonable, does not

11

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). Lastly, Ms. Flood does not present any factual detail or argument to support her claims that counsel was ineffective for not presenting evidence regarding the government informant's lack of credibility and for not challenging the warrantless search. "Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (citation omitted). Thus, Ms. Flood also is not entitled to relief on grounds (2), (3), (5)(a) and (5)(b).

## C.  Ground (4):  Counsel's Failure to File Notice of Appeal

### 1.  Summary of Relevant Evidentiary Hearing Testimony

At the conclusion of the January 23, 2014 sentencing hearing, the Court stated, Ms. Flood "has the right of appeal, whatever is left after the plea agreement. And I assume you [meaning Ms. Flood's attorney, Vionette Reyes Johnson,] will continue to represent her during the appeal process time." (Sentencing Hr'g Tr. 10.)  Ms. Johnson responded, "Yes, sir." (Id.) Ms. Flood testified at the evidentiary hearing on her Motion to Vacate that, after the Court made this statement, she asked Ms. Johnson, "So we can appeal this case?," and that Ms. Johnson replied, "No, he misspoke." (Evidentiary Hr'g Tr. 6, 8.)  Ms. Flood further testified that she had a similar

12

conversation with Ms. Johnson afterwards in the holding cell and that she had not been apprised of her right to appeal prior to her sentencing.  (Id. at 6, 9, 11.)

According to Ms. Flood, Ms. Johnson never counseled her with respect to her appellate rights, except to state that Ms. Flood had waived those rights.  (Evidentiary Hr'g Tr. 7-10, 12, 14-17, 33-34.)  Ms. Flood further testified that neither the Court nor Ms. Johnson ever advised her regarding the time frame within which she could appeal. (Id. at 7, 16.)  Ms. Flood admitted that she never asked Ms. Johnson to file an appeal and never mentioned an appeal in three separate communications directed to Ms. Johnson after her sentencing.  (Id. at 27-31.)  Ms. Flood also acknowledged that she had read the appeal waiver provision of her plea agreement, discussed it with Ms. Johnson, and signed the plea agreement, therein specifically affirming that she understood the appeal waiver.  (Id. at 20-21.)

Ms. Johnson testified that she met with Ms. Flood on October 2, and November 6, 2013, before Ms. Flood entered her guilty plea, and that, on both of those occasions, they discussed Ms. Flood's right to appeal.  (Evidentiary Hr'g Tr. 37.)  Pursuant to her general practice, Ms. Johnson would have advised Ms. Flood during those meetings that the plea agreement provided for a "complete waiver of appeal" because "[t]he plea agreement in this case was a binding plea to a ten-year sentence."  (Id.)  Ms. Johnson

13

testified that she would have read the waiver to Ms. Flood on November 6 and explained its exceptions. (Id. at 37-38, 47.) Ms. Johnson also confirmed that "[f]rom [her] perspective, [Ms. Flood] completely understood the appeal waiver." (Id. at 38.)

Ms. Johnson next testified that, during her post-sentencing consultation with Ms. Flood, she would have explained that, if Ms. Flood "filed an appeal the [g]overnment would move to dismiss the appeal, that the danger of filing a notice of appeal is that [the government] could argue there was a breach [of the plea agreement]," which also could result in Ms. Flood proceeding to a trial where she would face a possible sentence of twenty years. (Evidentiary Hr'g Tr. 40-41, 57.) Thus, in Ms. Johnson's judgment, "it was not in [Ms. Flood's] best interest to file an appeal in her case." (Id. at 41.) Ms. Johnson also testified that she would have reviewed the time for an appeal with Ms. Flood. (Id.) Ms. Johnson further stated that she nonetheless would have filed an appeal if Ms. Flood had directed her to do so, as she had done in the past for former clients subject to similar appellate waivers. (Id. 41-42.) Ms. Johnson confirmed this consultation in a letter to Ms. Flood dated February 3, 2014. (Id. at 43.)

    2.    **Analysis**

Where, as here, a defendant has not specifically instructed her counsel to file an appeal, a court must inquire "whether counsel in fact consulted with the defendant

14

about an appeal" by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000).  If so, counsel has rendered effective assistance.  Id.  If counsel either did not consult with the defendant or the consultation was constitutionally inadequate, a court must consider whether "counsel had an affirmative duty to consult" with the defendant concerning an appeal. Thompson v. United States, 504 F.3d 1203, 1207 (11th Cir. 2007).   The "constitutionally imposed duty to consult" arises when either (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) the "particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Flores-Ortega, 528 U.S. at 480.

> This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly . . . waived some or all appeal rights."

Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 480).  Lastly, a court must consider whether the defendant has shown prejudice, i.e., "that there is a reasonable probability that, but for counsel's deficient

failure to consult with him about an appeal, he would have timely appealed." <u>Flores-Ortega</u>, 528 U.S. at 484.

Having considered the testimony and evidence presented at the evidentiary hearing, the Court finds Ms. Johnson's testimony more credible than Ms. Flood's testimony and concludes that Ms. Johnson consulted with Ms. Flood about her right to appeal in a constitutionally adequate manner on more than one occasion.  Ms. Johnson reviewed the appeal waiver provision of the plea agreement with Ms. Flood and made certain that Ms. Flood understood it, which Ms. Flood acknowledged by signing her plea agreement and confirming with the Court during her plea hearing. Ms. Johnson further explained that, if Ms. Flood appealed, the government could move to dismiss the appeal pursuant to the waiver and might construe the appeal as a breach of the plea agreement, which could then result in a trial where Ms. Flood would face a possible sentence of double what she received under the plea agreement.  Ms. Johnson thus advised Ms. Flood that it was not in her best interest to appeal.

Alternatively, even if Ms. Johnson's consultation with Ms. Flood was constitutionally inadequate, the Court further finds that Ms. Johnson did not have a constitutional duty to consult with Ms. Flood regarding her appeal rights.  Ms. Flood was convicted following a guilty plea pursuant to a binding plea agreement that

16

included an appeal waiver provision.  Ms. Flood received the precise statutory mandatory minimum sentence for which she had bargained and expected.  The only exceptions to the appeal waiver, i.e., a government appeal or a sentence that exceeded the guideline range as calculated by the Court, do not apply here.  Thus, Ms. Flood had no nonfrivolous ground to appeal, and the Court finds that a rational defendant would not want to appeal.

Moreover, the Court finds that Ms. Flood understood the significance of her appeal waiver, as well as Ms. Johnson's reasonable advice that an appeal was not in Ms. Flood's best interest, and that Ms. Flood made the decision not to pursue an appeal.  Ms. Flood testified that she had questions about her appellate rights on the day of sentencing and was advised by counsel at that time, but she never again raised the issue of an appeal in three subsequent communications directed toward counsel.  Thus, Ms. Flood has not shown that she reasonably demonstrated an interest in appealing. See Devine v. United States, 520 F.3d 1286, 1288-89 (11th Cir. 2008) (per curiam) (concluding that defendant "did not reasonably demonstrate to counsel that he was interested in appealing" where he and counsel discussed the question of an appeal, counsel gave accurate advice, defendant understood that an appeal would be futile, and

17

defendant "did not say anything to suggest that he was interested in appealing anyway" and did not mention the appeal in a subsequent conversation with counsel's secretary).

Lastly, Ms. Flood has not shown that she would have timely appealed absent Ms. Johnson's alleged failure to adequately consult with her about an appeal.  That Ms. Flood asked Ms. Johnson about her appeal rights during sentencing and afterwards in her holding cell is not enough to show that she "would have instructed . . . counsel to file an appeal" had counsel provided reasonable advice.  Flores-Ortega, 528 U.S. at 486.  Thus, Ms. Flood has not shown prejudice, and she is not entitled to relief on ground (4).

## III.   CERTIFICATE OF APPEALABILITY

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  28 U.S.C. foll. § 2255, Rule 11(a).  Section 2253(c)(2) of Title 28 states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A movant satisfies this standard by showing "that reasonable

18

jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  Based on the foregoing discussion of Ms. Flood's claims for relief, the resolution of the issues presented is not debatable by jurists of reason; thus, the Court should deny a certificate of appealability.

IV.   **CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that the Motion to Vacate [48], as amended [52 and 60-1], be **DENIED**, and that the Court **DECLINE** to issue a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral of the Motion to Vacate to the undersigned.

**SO RECOMMENDED**, this 26th day of March, 2015.

_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

19